**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

VICTOR PERDOMO

*Defendant*.

No. 3:18cr162 (MPS)

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Defendant Victor Perdomo, who is serving a sentence of imprisonment at Moshannon Valley Correctional Institution in Pennsylvania, filed a *pro se* motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment due to the dangers posed by the virus that causes COVID-19. ECF No. 617. After I appointed counsel for Perdomo, counsel filed a supplemental motion in support of Perdomo's request. ECF No. 627. The Government has filed memoranda in opposition. ECF Nos. 618 and 631. I have carefully considered all these materials, as well as Perdomo's medical and other records submitted along with his and the Government's memoranda. ECF Nos. 41-1, 47, 49-1, 52, 61. For the reasons that follow, Perdomo's motion is denied.

On August 2, 2018, a Federal Grand Jury returned a 27-count Indictment against Perdomo and fifteen co-conspirators, charging them with federal narcotics and firearms offenses. ECF No. 618. On October 9, 2019, a Federal Grand Jury returned a Second Superseding Indictment against Perdomo and four co-conspirators. *Id*. On October 21, 2019, Perdomo pled guilty to Count One of the Second Superseding Indictment, charging him with conspiracy to distribute and to possess with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§846, 841(a)(1), and

841(b)(1)(B). ECF Nos. 579, 618, 627. On August 7, 2020, I sentenced Perdomo to 70 months of imprisonment, followed by four years of supervised release. *Id.* Perdomo has been in continuous custody since his arrest on July 19, 2018, and has served approximately 30 months of his sentence. ECF No. 37 at 2; ECF No. 46 at 1. His projected date of release is July 8, 2023. ECF No. 627 at 2 ¶ 5.

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Under this section, as modified by the First Step Act of 2018, Pub. L. No.115-391, 132 Stat. 5239, I am free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). In particular, because Perdomo – and not the Bureau of Prisons ("BOP") – brings this motion, I am not limited by the Sentencing Commission's policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, which the Second Circuit recognized as applying only to motions for sentence reduction brought by the BOP. *Brooker*, 2020 WL 5739712, at *1, 6 ("hold[ing] that Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act . . ."; rather, this Guideline "only [applies] to those motions that the BOP has made" under this

Act). However, "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Brooker*, 2020 WL 5739712, at *8 (citing 28 U.S.C. § 994(t)) (emphasis in original).

Therefore, I may reduce Perdomo's term of imprisonment, after considering the Section 3553(a) factors if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt by the Warden of his facility of his request for a sentence reduction , and (2) I find that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

Perdomo has met the exhaustion requirement because the Warden at Moshannon Valley CI reportedly denied his request for release on December 22, 2020, although Perdomo has submitted no evidence on this point. ECF No. 627 at 4. As to the merits of Perdomo's motion, I find that, when all of the circumstances, including the Section 3553(a) factors, are considered, he has not shown that a reduction of his term of imprisonment is warranted.

Perdomo argues that he has extraordinary and compelling reasons to be released because he is at high risk for serious illness or death from COVID-19 due to his alleged obesity, hypertension, and asthma. ECF No. 627 at 5. Moreover, he argues that he has shown extraordinary and compelling reasons for his release because he has chronic fatigue due to having contracted COVID-19 on October 20, 2020, while incarcerated. ECF Nos. 627 at 5, 617 at 2. I address each of these conditions below after taking account of Perdomo's age.

Perdomo is currently 36 years old. ECF No. 631 at 2. According to the Centers for Disease Control and Prevention ("CDC"), "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk."[1] Age-related risk increases on a sliding scale and the "greatest risk for severe illness from COVID-19 is among those aged 85 or older."[2] Thus, Perdomo does

---

[1] Centers for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited January 27, 2021).
[2] *Id*.

not face a substantial risk of severe illness from COVID-19 due to his age, but, based on my discussion of the Section 3553(a) factors below, I would reach the same result even if he did.[3]

Obesity places individuals at increased risk of severe illness from COVID-19 under the CDC guidelines. According to the CDC, "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19."[4] Obesity, defined as a BMI of 30 or greater, is one of these underlying medical conditions.[5] Perdomo contends that he is obese and has a history of being overweight. ECF No. 627 at 5-6. However, there are conflicting reports regarding Perdomo's current weight and BMI. ECF Nos. 627 at 6, 631 at 2. Perdomo states that he has a BMI of 30.4 and attaches medical records from the Dominican Republic from April 2018, October 2017, and September 2016, which report that he weighed between 269 and 270lbs. ECF No. 629-1. With a weight of 270lbs and a height of 6'2", Perdomo would have a BMI of 34.7, which is in the "obese" range.[6] According to Perdomo's Presentence Report of February 6, 2020, however, he weighed 200lbs. PSR at ¶ 47. With a weight of 200lbs and a height of 6'2", Perdomo would have a BMI of 25.7, which is (barely) in the "overweight" range.[7] ECF No. 631 at 2. Persons with a BMI over 25, according to the CDC, "might be at an increased risk" of severe illness from COVID-19. Thus, Perdomo faces some degree of risk of severe illness due to his weight, but the exact degree of risk is unclear given the conflicting evidence.

It is not clear whether Perdomo faces any increased risk due to hypertension. According

---

[3] *Id*. (individuals in the 40-49 year age range face a 3x greater risk of hospitalization and 10x greater risk of death than individuals in the 18-29 year age range; individuals in the 65-74 age range face a 5x and 90x greater risk, respectively, compared to the same 18-29 year range; and individuals above 85 years face a 13x and 630x greater risk, respectively, with the same comparison group).

[4] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 27, 2021).

[5] *Id*.

[6] Centers for Disease Control and Prevention, *Adult BMI Calculator*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited January 27, 2021).

[7] *Id*.

to the CDC, having "hypertension (high blood pressure) . . . might increase [a person's] risk of severe illness from COVID-19."[8] Perdomo points to his 2016, 2017, and 2018 blood pressure readings from the Taiwan Regional Hospital in the Dominican Republic, which are consistent with hypertension, as evidence of this risk factor.[9] *See* ECF No. 627 at 5-7. However, Perdomo concedes that neither his Pre-Sentence Report nor his BOP medical records provide evidence of hypertension. ECF No. 627 at 5. Moreover, Perdomo does not indicate that he has ever been treated for hypertension.

Perdomo's medical records from the Taiwan Regional Hospital in the Dominican Republic indicate that in April 2018, he had a blood pressure of 140/90 mmHg and a personal history of HTA Arterial Hypertension. ECF No. 629-1 at 1-2 (Translated). Further, his records from October 2017 show that he had a blood pressure of 140/80 mmHg and a personal history of HTA Arterial Hypertension. *Id.* at 3-4. Finally, his records from September 2016 indicate that he had a blood pressure of 140/90 mmHg. *Id.* at 5-6. Nonetheless, there does not appear to be a clinical diagnosis of hypertension in these records. According to the Mayo Clinic, a "doctor will likely take two to three blood pressure readings each at three or more separate appointments before diagnosing [a patient] with high blood pressure. This is because blood pressure normally varies throughout the day, and it may be elevated during visits to the doctor [due to] []white coat hypertension[]."[10]

---

[8] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 5.

[9] Blood pressure measurements fall into four general categories:

> Normal blood pressure is below 120/80 mm Hg.
>
> Elevated blood pressure is a systolic pressure ranging from 120 to 129 mm Hg and a diastolic pressure below 80 mm Hg.
>
> Stage 1 hypertension is a systolic pressure ranging from 130 to 139 mm Hg or a diastolic pressure ranging from 80 to 89 mm Hg.
>
> Stage 2 hypertension is a systolic pressure of 140 mm Hg or higher or a diastolic pressure of 90 mm Hg or higher.

Mayo Clinic, *High Blood Pressure (hypertension)*, https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417 (last visited January 27, 2021).

[10] *Id.* According to Wikipedia, "white coat hypertension," more commonly known as white coat syndrome, is a phenomenon in which people exhibit a blood pressure level above the normal range in a clinical setting, although they do not reveal it in other settings. It is believed that the phenomenon is due to anxiety experienced during a

Thus, it is not clear that Perdomo suffers from hypertension or faces any increased risk of severe illness from COVID-19 based on his blood pressure readings. In any case, based on my discussion of the Section 3553(a) factors below, I would reach the same result even if he did.

Next, Perdomo points to his history of asthma as a factor that increases his medical vulnerability to COVID-19. ECF No. 627 at 5. While there is a reference to "bronchial asthma" in his Dominican medical records, Perdomo reported to the Probation Office in connection with its preparation of the Presentence Report that he "he has never had any medical issues in the past" and "does not have any current medical issues." ECF No. 442 at para. 47. There is no evidence that he has been treated for asthma.[11] As a result, I find that he likely does not face any increased risk of severe illness from COVID-19 based on his claim of asthma. Nevertheless, based on my discussion of the Section 3553(a) factors below, I would reach the same result even if he did.

Lastly, Perdomo notes that he has contracted COVID-19 and now experiences chronic fatigue due to his illness. ECF No. 617 at 2. Again, he offers no medical records to support this assertion. Perdomo also provides no evidence to show that he requires treatment for his chronic fatigue or that it increases his risk of becoming re-infected with COVID-19 or creates other extraordinary or compelling circumstances. Moreover, the fact that Perdomo has contracted and recovered from COVID-19 may decrease his likelihood of reinfection.[12] As a result, I find that he likely does not face any increased risk of severe illness from COVID-19 based on his claim of contracting COVID-19. Nevertheless, based on my discussion of the Section 3553(a) factors

clinic visit.

[11] According to the CDC, "[h]aving moderate-to-severe asthma might increase your risk for severe illness from COVID-19." Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 5. The parties have not identified, and the Court has not found anything in Perdomo's records, indicating that he suffers from "moderate-to-severe" asthma.

[12] While the CDC is still learning about COVID-19, it reports that reinfection remains rare. Centers for Disease Control and Prevention, *Facts About Covid-19 Vaccine*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html (last visited January 27, 2021).

below, I would reach the same result even if he did.

While Perdomo may face an increased risk from COVID-19 under the CDC guidelines due to his obesity, high blood pressure, and other medical conditions,[13] I find that these conditions are insufficient to warrant a reduction in his term of imprisonment when the factors in 18 U.S.C. § 3553(a) are taken into account, as they must be under Section 3582(c)(1)(A). As detailed in the Government's memorandum, Perdomo was selling large amounts of fentanyl and heroin in wholesale quantities in Connecticut and was a co-conspirator in a drug trafficking operation that poured vast amounts of these dangerous drugs into the streets of Hartford, Connecticut. ECF No. 618 at 8. Fentanyl and heroin are at the center of Connecticut's opioid crisis and contributed to over 1,000 overdose deaths in the state last year. *Id.* It would not be consistent with the purposes of protecting the public or reflecting the seriousness of the offense to release Perdomo from prison after serving only 30 months of his seventy-month sentence. Moreover, Perdomo already received something of a break: I sentenced him at the bottom of the Guidelines range to take into account that he will likely be deported and spend time detained in ICE custody after his sentence is served. ECF No. 579 at 1. As a result, after considering the facts here in light of the Section 3553(a) factors, I cannot find the requested reduction in Perdomo's term of imprisonment is warranted.

I do not take lightly the danger that COVID-19 poses to inmates, especially those who are medically vulnerable. Nonetheless, I find that, when the Section 3553(a) factors are accounted for in this case, the risk to Perdomo's health posed by COVID-19 does not warrant ending his term of imprisonment. I, therefore, must deny this motion.

---

[13] The CDC guidelines state that with respect to people with multiple underlying conditions: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 7.

For the foregoing reasons, Perdomo's motion to reduce sentence (ECF Nos. 617, 627) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
January 29, 2021